## STATE OF CONNECTICUT *v.* FRANK WOJCULEWICZ

BALDWIN, INGLIS, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued October 14—decided December 15, 1953

*James D. Cosgrove*, public defender, for the appellant (defendant).

*Albert S. Bill,* state's attorney, with whom, on the brief, was *Douglass B. Wright,* assistant state's attorney, for the appellee (state).

WYNNE, J. The grand jury who indicted the defendant charged in one count that on November 5, 1951, at New Britain, the defendant, in perpetrating a robbery, murdered William J. Grabeck, and in a second count that at the same time and place he murdered William Otipka. The jury returned a verdict of guilty of murder in the first degree on each count. The defendant has appealed to this court. The assignments of error which he has pressed are (1) the denial of his motion to set aside the verdict, (2) the denial of his motion for a continuance and (3) the denial of his motion to strike out some of the testimony of an expert in ballistics.

The following facts could reasonably have been found by the jury: On November 5, 1951, the defendant entered the establishment of the A.Y.O. Packing Company on Washington Street in New Britain at about 5:30 p. m. He pointed a short-barreled revolver at Helen Dul, the bookkeeper in charge of the office, and at Aloysius Dzwil, another employee then present. The defendant threatened both with the gun and ordered Dzwil to stand with his face to the wall, which he did. The defendant then removed some money from the desk at which Miss Dul sat. He ordered Dzwil to remove some money from the safe. The latter complied and handed to the defendant a strong box and some bags of money. The defendant then backed out of the office and, after placing the box and bags on the garage floor outside the door,

immediately returned, went to the safe and removed other bags of money.

When the defendant had first entered the office, he was seen by Chester Labieniec, an employee of the company. Labieniec, whose suspicion had been aroused, went to the office door and looked in. Seeing the defendant pointing the gun at Miss Dul and Dzwil, he hurriedly called the police. Officers arrived just as the defendant was backing out of the office the second time, still covering the employees with the gun. At this point Sergeant Grabeck of the New Britain police department entered the front door of the establishment. He stepped up to the defendant, put his gun to the latter's back and ordered him to drop his gun. At this instant William Otipka entered the establishment. This man was the husband of an employee of the A.Y.O. Packing Company and was accustomed to call at the time of day in question to meet his wife. He stepped to the side of Sergeant Grabeck and the defendant, whereupon the defendant wheeled towards Otipka and there were a number of shots fired in rapid succession. Otipka staggered from the scene, fell, mortally wounded, to the garage floor, and died within a few minutes. Sergeant Grabeck walked to the street, collapsed on the sidewalk, and died shortly after at the hospital. The defendant, also wounded, lay on the floor of the garage. He was seen by Officer Wojtusik reaching for the short-barreled revolver which lay on the floor near his right hand, and the officer shot twice at him. Wojtusik entered the garage, handcuffed the defendant, and took him into custody. A ballistic examination of the three guns involved indicated that the bullet which killed Sergeant Grabeck came from the gun carried by the defendant, as did the bullet which killed Otipka.

It is argued in behalf of the defendant that the evidence does not establish that he fired the shots which killed the deceased persons. There was evidence that Otipka had entered the room behind Sergeant Grabeck, circled around him, said something, and made a lunge for the defendant before any shots were fired. It is argued that it was possible for Otipka to have wrested the gun from the defendant and then fired it, first hitting Sergeant Grabeck and then himself. There was, however, sufficient evidence from which the jury could reasonably conclude that the defendant, when Otipka stepped between him and Grabeck, wheeled to his left toward Otipka, shot him, and, while completing his motion to his left, shot Sergeant Grabeck. The defendant's suggestion that Otipka might have been the one who fired the shots is mere surmise, and the theory is too tenuous to raise a reasonable doubt as to the defendant's guilt. There was no error in denying the motion to set the verdict aside.

In the course of the trial on Friday, March 14, 1952, at noon, after a recess, counsel for the defendant made an oral motion that court be adjourned until the following Tuesday, on the ground that the defendant was in such pain that he was unable to continue with the trial. The state opposed the motion, and the court heard the testimony of Dr. Ray F. Lowry, who had the defendant under his care. Dr. Lowry testified that in his opinion the condition of the defendant was such that he could continue to stand trial. The court denied the motion for continuance, and the defendant took exception to this ruling. The right of a defendant to a continuance is within the sound discretion of the trial court. *State* v. *Lee,* 69 Conn. 186, 193, 37 A. 75. In this connection it is of great significance that the state's case was nearly finished and

that shortly the trial was, in fact, recessed until the following Tuesday. When court convened on Tuesday, the defendant rested his case without calling witnesses. Here it does not appear that there was an abuse of discretion.

The denial of the motion in behalf of the defendant that the testimony of Lieutenant Frank Chameroy be stricken from the record is assigned as error. This witness was offered as an expert in ballistics. The defendant claims that the testimony of Lieutenant Chameroy should have been stricken because of the fact that the test bullet used by him was not offered in evidence. He was subjected to a lengthy cross-examination during which he stated that he had the bullet actually with him in court. It was not offered by either party, nor was any other expert in ballistics called. The introduction in evidence of the test bullet is not essential to make admissible the expression of an expert's conclusions based upon his experiment in which the test bullet was fired. *McKenna* v. *People,* 124 Colo. 112, 116, 235 P.2d 351.

There is no error.

In this opinion the other judges concurred.